The STATE of Ohio, Appellee,

v.

CASALICCHIO, Appellant.

[Cite as *State v. Casalicchio*, 160 Ohio App.3d 522, 2005-Ohio-1750.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 84690.

Decided April 14, 2005.

William D. Mason, Cuyahoga County Prosecuting Attorney, George Rukovena, and Andrew J. Nicho, Assistant Prosecuting Attorneys, for appellee.

Robert L. Tobik, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, for appellant.

JAMES J. SWEENEY, Presiding Judge.

{¶ 1} Defendant-appellant, Joseph Casalicchio, appeals from the judgment entered pursuant to a jury verdict finding him guilty of intimidation. Defendant also appeals a five-year prison sentence imposed by the trial court. For the following reasons, we affirm the defendant's conviction, vacate the sentence, and remand for resentencing.

{¶ 2} This case arose from allegations that defendant hired the Hell's Angels to kill Judge Kathleen Sutula of the Cuyahoga County Court of Common Pleas.

{¶ 3} On October 16, 2003, the Cuyahoga County Grand Jury indicted defendant on one count of conspiracy to commit murder in violation of R.C. 2923.01 and R.C. 2903.01; one count of attempted murder in violation of R.C. 2923.02 with a firearm specification; one count of felonious assault in violation of R.C. 2903.11; one count of retaliation in violation of R.C. 2921.05; and one count of intimidation in violation of R.C. 2921.03.

{¶ 4} At trial, the following facts were established: On April 28, 2001, Judge Sutula's home and garage were the object of gunfire. Judge Sutula was not home at the time the shots were fired. However, upon discovering the bullet holes, she called the Seven Hills Police Department and the Cuyahoga County Sheriff's Department and filed reports.

{¶ 5} The Sheriff's Department focused their investigation on persons who had had recent dealings with the judge. The defendant's name was mentioned during the initial investigation because two months earlier, on February 27, 2001, Judge Sutula had sentenced him to 33 months' incarceration in CR–394192.[1] However, his name was dismissed because he was incarcerated at the time of the shooting and the judge felt there was nothing significant about the trial or sentence.

{¶ 6} On February 14, 2002, this court affirmed defendant's conviction but remanded the case for a new sentencing hearing as Judge Sutula did not state the requisite findings on the record.

{¶ 7} In April 2002, defendant, while in the Marion Correctional Institution, told another inmate, James Giminez, that he had paid someone to kill Judge Sutula but that the assassination attempt had failed. On April 5, 2002, Mr. Giminez wrote Judge Sutula a letter informing her of the defendant's statements.[2] Judge Sutula forwarded the letter to the Sheriff's Department.

{¶ 8} In November 2002, Judge Sutula resentenced defendant to the same sentence of 33 months and defendant was assigned to Grafton Correctional Institution to serve his sentence.

{¶ 9} On April 28, 2003, the Sheriff's Department placed an informant, Videll Schumpert, in the jail with the defendant. Mr. Schumpert was wired and taped his conversation with the defendant. During this conversation, defendant told Mr. Schumpert that he gave the Hell's Angels money to kill the judge, but that they had "f----- up" the job. Defendant stated that he was sure that if Judge Sutula were dead, he would have received a lesser sentence from another judge. Defendant also stated that when he got out, he would make sure the job got done.

{¶ 10} On March 1, 2004, a jury trial began. On March 10, 2004, the jury returned a guilty verdict on the one count of intimidation as charged in the indictment. Defendant was acquitted of the remaining charges. Defendant was sentenced to five years of incarceration. Defendant now appeals and raises the following five assignments of error for our review.

{¶ 11} "I. The defendant was denied Federal and State due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when he was convicted on evidence that was insufficient as a matter of law to sustain the conviction for intimidation."

---

1.  This sentence was on appeal at the time of the shooting.

2.  Mr. Giminez had previously been sentenced by Judge Sutula for violent crimes and credited her with turning his life around. As a result, he regularly wrote to her.

{¶ 12} In his first assignment of error, defendant argues that the evidence was insufficient to support his conviction for intimidation. We disagree.

{¶ 13} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the state. *State v. Dennis* (1997), 79 Ohio St.3d 421, 430, 683 N.E.2d 1096.

{¶ 14} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.

{¶ 15} Here, defendant was convicted of intimidation in violation of R.C. 2921.03(A), which provides as follows:

{¶ 16} "(A) No person, knowingly and by force, [or] by unlawful threat of harm to any person * * * shall attempt to influence, intimidate, or hinder a public servant [or a] party official * * * in the discharge of the person's duty."

{¶ 17} When viewed in the light most favorable to the state, the record contains sufficient evidence that defendant knowingly attempted to intimidate Judge Sutula while she was in the discharge of her duty and the trial court properly denied his motion for acquittal.

{¶ 18} Here, Judge Sutula testified that she sentenced the defendant to 33 months in jail on February 27, 2001. She testified that at the time of the shooting, the defendant had filed an appeal of his conviction and sentence. The resentencing took place on November 25, 2002, and defendant received the originally imposed sentence.

{¶ 19} Next, Mr. Giminez testified that he met the defendant in the chow hall at Marion Correctional Institution and that defendant went "ballistic" when Judge Sutula was mentioned. He testified that defendant called her names and stated that the people he had hired to kill her had "botched" the job. He said that defendant was angry that he had to reappear in front of Judge Sutula for his resentencing. Giminez stated that he wrote Judge Sutula a letter telling her what defendant had said but that he did not hear anything until September 2003 when the police came to question him. On cross-examination, Giminez admitted that defendant had a reputation for bragging and boasting and that he was

generally skeptical about defendant's truthfulness. However, he also stated that this time it felt different.

{¶ 20} Finally, Mr. Schumpert testified that the defendant was very hostile about the judge and called her a "bitch" and stated that she messed up his life. Schumpert testified that defendant told him that he paid the Hell's Angels $35,000 to kill the judge but that they "f----- up" the job. He stated that defendant told him that he was going to make sure they finished the job when he got out or he was going to do it himself.

{¶ 21} When this evidence is viewed in the light most favorable to the state, the court could find that the defendant attempted to intimidate the judge in her official duty as a public servant when he hired someone to kill her. First, at the time of the shooting, his case was pending on appeal. His appeal sought remand for resentencing, among other things. Second, Judge Sutula retained jurisdiction over defendant in matters not directly involved with the pending appeal, such as motions for postconviction relief, judicial release, etc. Third, at the time defendant claimed responsibility for the act, the matter was set before the judge for resentencing. Consequently, it would be reasonable for the jury to find that defendant was attempting to intimidate the judge in her official capacity with the hopes of at least receiving a lesser sentence at his resentencing hearing. Accordingly, this court concludes that any rational trier of fact could have found the essential elements of intimidation proven beyond a reasonable doubt. Defendant's arguments to the contrary must fail.

{¶ 22} Assignment of Error I is overruled.

{¶ 23} "II. The conviction for intimidation was against the manifest weight of the evidence."

{¶ 24} In his second assignment of error, defendant argues that his conviction is against the manifest weight of the evidence. We disagree.

{¶ 25} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest-weight challenge questions whether the state has met its burden of persuasion. *State v. Thompkins*, supra, 78 Ohio St.3d at 390, 678 N.E.2d 541. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. at 387, 678 N.E.2d 541.

{¶ 26} Here, the jury heard Judge Sutula testify that defendant had been identified as a possible suspect early in the investigation of the shooting. The

jury heard two witnesses testify that defendant told them that he had hired the Hell's Angels to kill Judge Sutula but that they had "f----- up" the job. Giminez testified that defendant was angry that he had to reappear in front of Judge Sutula for his resentencing. Schumpert testified that defendant stated that he would have received a lesser sentence from another judge if Judge Sutula had been killed. Schumpert's conversations with defendant were played for the jury. Under these circumstances, we conclude that the same facts that overcome a sufficiency-of-the-evidence claim also overcome his manifest-weight argument.

{¶ 27} Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in finding defendant guilty of intimidation. We find there to be substantial, competent, and credible evidence upon which the jury could base its decision that defendant knowingly threatened and attempted to harm Judge Sutula while she was in the discharge of her official duty.

{¶ 28} Assignment of II is overruled.

{¶ 29} "V. The trial court erred in violation of the defendant's right under the Sixth Amendment to the United States Constitution to be present and represented by counsel at all critical stages of proceedings, and in violation of his right under the Fourteenth Amendment to the United States Constitution to due process of law when it included the possibility that he would serve a term of post-release control via a journal entry, after not having mentioned it at sentencing."

{¶ 30} After defendant was found guilty of intimidation by the jury, the trial court convicted him of that offense. Upon the trial court determining that a prison term was necessary, R.C. 2929.19(B)(3)(d) required the court to advise defendant that he could be subject to a period of postrelease control after his release from imprisonment if the parole board determined that to be necessary for him. Here, the trial court did not notify defendant at the sentencing hearing that he could be subject to postrelease control, but did include that notice in its sentencing entry. This was erroneous.

{¶ 31} When a trial court fails to notify an offender about postrelease control at the sentencing hearing but incorporates that notice into its journal entry imposing sentence, it fails to comply with the mandatory provisions of R.C. 2929.19(B)(3)(c) and (d) and the entire sentence must be vacated and the matter remanded to the trial court for resentencing. *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864. Defendant's position that only the postcontrol term should be vacated has been explicitly rejected by the Ohio Supreme Court. See id.

{¶ 32} Since this matter is being remanded to the trial court for resentencing, we decline to address defendant's third and fourth assignments of error, which both involve challenges to the court's sentence.

{¶ 33} The judgment is affirmed, the sentence is vacated, and the cause is remanded for resentencing.

Judgment accordingly.

ANTHONY O. CALABRESE and CHRISTINE T. MCMONAGLE, JJ., concur.